# In the United States District Court for the Southern District of Georgia Waycross Division

TIMOTHY HINTON,       )
                        )
     Plaintiff,     )
                        )
     v.                )     5:22-CV-016
                        )
STEVE UPTON, et al.,   )
                        )
     Defendants.    )

## ORDER

This action is before the Court on Defendants Upton, Webb, Jones, Williams, Clark, and Strickland's partial motion to dismiss, dkt. no. 13, and Defendant Grieco's motion to dismiss, dkt. no. 14. For the reasons given below, both motions are **DENIED**.

## BACKGROUND

Plaintiff Timothy Hinton is an inmate at the Coffee Correctional Facility ("CCF"). Dkt. No. 1 at 1. CoreCivic, a private corporation, runs CCF pursuant to a contract with the State of Georgia or the Georgia Department of Corrections ("GDC"). Id. ¶¶ 80-82. CoreCivic employs Defendants Upton, Webb, Jones, Williams, Clark, and Strickland ("CoreCivic Defendants"). Id. ¶ 79.

On or about March 24, 2020, another inmate who resided in Plaintiff's housing unit "made threats against Plaintiff's life."

Id. ¶ 14. That inmate was a member of the street gang "Gangster Disciples" and threatened Plaintiff because he allegedly owed a Gangster Disciple leader money. Id. According to the complaint, "[i]t is commonly known in Georgia prisons that a threat by a gang can be carried out by any gang member or even a non-gang member" such that "if a gang puts out word that an inmate is going to be attacked, it is a near-certainty that the inmate will be attacked." Id. ¶ 46. Later that day, Plaintiff notified his housing unit manager about the threats and formally requested to be placed in protective custody. Id. ¶ 15.

CCF staff moved Plaintiff to protective custody while they investigated the threats. Id. ¶ 16. The CCF classification committee—which included Defendants Upton (CCF Warden) and Jones (CCF Chief of Security)—investigates requests for protective custody and decides whether to grant or deny the requests. Id. ¶¶ 18-19. On or about April 1, 2020, the classification committee verified the threats against Plaintiff, determined there was a substantial risk of serious harm against him, and granted his request for protective custody. Id. ¶¶ 17-18.

The controlling CCF policy ("single-cell policy") at the time (1) prohibited double-bunking of inmates in protective custody except in emergency situations; (2) required notification of the double-bunking to the Warden or Superintendent during an emergency; (3) required the Warden or Superintendent ask the

2

Regional Director for approval to double-bunk inmates; (4) prohibited any approval of emergency double-bunking from lasting more than 72 hours; and (5) required any double-bunking exceeding 72 hours to be approved in writing by the Director of Field Operations. Id. ¶ 24.

Plaintiff asked Defendant Strickland to place him in a single cell during his protective custody, citing the CCF single-cell policy. Id. ¶ 26. Defendant Strickland refused, referring to an "institutional policy" that CCF did not put protective-custody inmates in single cells. Id. ¶¶ 27-28. Instead, CCF staff placed Plaintiff in a protective-custody cell with inmate Mingo, who was serving a life sentence for murder. Id. ¶ 47.

On subsequent occasions, Plaintiff pleaded with Defendants Strickland, Clark, Jones, Webb, Williams, Upton, and Grieco to move him to a single cell, reminding them of CCF's single-cell policy. Id. ¶¶ 29-44. Defendants all denied Plaintiff's request, and several Defendants again told Plaintiff it was CCF's policy not to place protective-custody inmates in single cells. Id.

While Plaintiff was housed in protective custody, Defendant Grieco, the GDC commissioner's designee, regularly patrolled the area where Plaintiff was housed. Id. ¶ 39. Plaintiff saw Defendant Grieco multiple times and "begged" to be moved to a single cell. Id. ¶ 40. Defendant Grieco did not move Plaintiff. Id. ¶ 44.

On April 9, 2020, Plaintiff saw that Mingo received several

3

"kites," which are written messages the CCF staff permitted Mingo to receive in the cell he shared with Plaintiff. Id. ¶ 48. On April 10, 2020, Mingo attacked Plaintiff from behind while Plaintiff urinated. Id. ¶¶ 45, 49. CCF staff transported Plaintiff to the local hospital, where he was treated for lacerations to his face and a severe concussion. Id. ¶ 49. After the attack, Defendants Clark and Strickland again tried to force Plaintiff to house with Mingo. Id. ¶ 56. When Plaintiff objected, Defendant Clark responded, "This ain't Burger King; you can't have it your way." Id. ¶ 56.

Plaintiff filed a pro se suit relating to the attack against Defendants Grieco, Upton, Webb, Jones, Williams, and Clark, among others, alleging violation of his Eighth Amendment rights under Section 1983. Dkt. No. 16 at 9; see also Hinton v. CoreCivic, Inc., et al., No. 5:20-cv-88 (S.D. Ga.). The Court conducted a frivolity review under 28 U.S.C. § 1915(a) and authorized an action against Defendants Upton and Grieco. Hinton, No. 5:20-cv-88, ECF 1. Id. After retaining counsel, Plaintiff voluntarily dismissed the suit, which the Court accepted. See Hinton, No. 5:20-cv-88-LGW-MWC, ECF 19. Subsequently, Plaintiff filed this suit, "crafting the complaint anew." Dkt. No. 16 at 9; see also Dkt. No. 1.

In this suit, Plaintiff alleges (1) a Section 1983 Eighth Amendment claim against Defendant Grieco and CoreCivic Defendants for failure to protect, id. ¶¶ 59-78, and (2) a state-law

negligence claim against CoreCivic Defendants, id. ¶¶ 79-98.

CoreCivic Defendants filed a motion to dismiss only Plaintiff's state-law negligence claim under Rule 12(a)(1) for lack of subject matter jurisdiction. Dkt. No. 13. Defendant Grieco filed a motion to dismiss Plaintiff's Section 1983 claim against him under Rule 12(b)(6) for failure to state a claim and qualified immunity. Dkt. No. 14. The motions are fully briefed, dkt. nos. 13, 14, 16, 19, 20, 22, and thus ripe for review.

**LEGAL STANDARD**

**I.  Motion to dismiss for lack of subject-matter jurisdiction**

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may be asserted on facial or factual grounds. Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009). Facial challenges are "based solely on the allegations in the complaint," while factual challenges may refer to extrinsic evidence. Id. In a facial challenge to subject matter jurisdiction, "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)). Thus, "[a] 'facial attack' on the complaint 'requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his

complaint are taken as true for the purposes of the motion.'" Id. (alterations accepted) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)); see also Carmichael, 572 F.3d at 1279.

## II.  Motion to dismiss for failure to state a claim

To state a claim for relief under Federal Rule of Civil Procedure 8, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility" when the plaintiff "pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79.

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th

Cir. 2007) (per curiam) (quoting <u>Roe v. Aware Woman Ctr. for Choice, Inc.</u>, 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (emphasis added)(quoting Fed. R. Civ. P. 8(a)(2)).

**DISCUSSION**

## I.   **CoreCivic Defendants' motion to dismiss**

CoreCivic Defendants move to dismiss Plaintiff's state law negligence claim under Rule 12(a)(1) for lack of subject matter jurisdiction. Dkt. No. 13-1. Specifically, CoreCivic Defendants urge the Court to decline supplemental jurisdiction over Plaintiff's state-law negligence claim. <u>Id.</u>

In relevant part, 28 U.S.C. § 1367(a) states:

> [e]xcept as provided in subsections (b) and (c) . . . the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(c) permits a district court to "decline to exercise supplemental jurisdiction over a claim" in four circumstances, including if "the claim raises a novel or complex issue of State law," <u>id.</u> § (c)(1), or if "in exceptional circumstances, there are other compelling reasons for declining

jurisdiction," id. § (c)(4). "[W]hile supplemental jurisdiction
*must* be exercised in the absence of any of the four factors of
section 1367(c), when one or more of these factors is present, the
additional Gibbs[1] considerations may, by their presence or
absence, influence the court in its decision concerning the
exercise of such discretion." Palmer v. Hosp. Auth. of Randolph
Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); see also Ameritox,
Ltd. v. Millennium Lab'ys, Inc., 803 F.3d 518, 537 (11th Cir. 2015)
("[Once] a district court possesses discretion to dismiss the
supplemental claims, it must be continuously mindful regarding
whether or not the [Gibbs] factors favor dismissal."). The Gibbs
factors include "judicial economy, convenience, fairness, and
comity." Ameritox, 803 F.3d at 537. Ultimately, however, "[t]he
decision to exercise supplemental jurisdiction over pendant state
claims rests within the discretion of the district court." Raney
v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004) (per
curiam) (citing Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th
Cir. 1999)).

CoreCivic Defendants concede that "the Court has the
*authority* [under 28 U.S.C. § 1367(a)] to exercise 'supplemental
jurisdiction' over Plaintiff's negligence claims because they are
based on the same occurrence." Dkt. No. 13-1 at 3. Nevertheless,

---

[1] United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

they argue the Court should decline jurisdiction under § 1367(c) because (1) the claim implicates novel issues of state law and (2) the potential for jury confusion presents a "compelling reason[]" for declining jurisdiction. Id. To evaluate the merit of CoreCivic Defendants' argument, the Court must first determine whether any of the Section 1367(c) factors are satisfied. Palmer, 22 F.3d at 1569. If any of them are, the Court must next determine whether the Gibbs factors favor dismissal. Id.

**A. Novel issue of state law**

CoreCivic Defendants are agents of a private and independent contractor, CoreCivic, which operates under a contract with the state of Georgia. Dkt. No. 1 ¶¶ 79–82. Georgia courts "have had no difficulty concluding that the operation of a jail and the care and treatment of individuals in police custody are purely governmental functions related to the governmental duty to ensure public safety and maintain order for the benefit of all citizens." City of Atlanta v. Mitcham, 769 S.E.2d 320, 324 (Ga. 2015) (citing Hurley v. City of Atlanta, 67 S.E.2d 571 (Ga. 1951)). With these principles in mind, CoreCivic Defendants argue Plaintiff's negligence claim raises a novel issue that "[n]either the Supreme Court of Georgia nor the Georgia Court of Appeals have addressed": "whether a private contractor performing a traditional[] government function is entitled to the protection of official immunity." Dkt. No. 13-1 at 8. Thus, CoreCivic Defendants urge,

the Court should decline jurisdiction over the negligence claim. Id. at 8–9.

Plaintiff responds that the Georgia Tort Claims Act ("GTCA") and related caselaw conclusively answer the issue CoreCivic Defendants raise in the negative: private contractors are not protected by official immunity. Dkt. No. 16 at 5–9. Plaintiff cites Hartley v. Agnes Scott College, 759 S.E.2d 857 (Ga. 2014), to support the "inescapable conclusion that private contractors do not enjoy any state immunity from suit." Dkt. No. 16 at 8–9. CoreCivic Defendants respond that Hartley held only that private contractors were not entitled to sovereign immunity; the Hartley court declined to determine whether official immunity applied because the Hartley defendants had not properly raised the issue. Dkt. No. 20 at 2.

Official immunity and sovereign immunity, while similar concepts, are not equivalent. State v. Int'l Indem. Co., 823 S.E.2d 806, 810 (Ga. 2019) ("Sovereign immunity and official immunity are distinct doctrines."). Sovereign immunity—or governmental immunity as it is also known—refers "to the immunity provided governmental entities," Gilbert v. Richardson, 452 S.E.2d 476, 481 (Ga. 1994), and "is intended to protect the public purse," Schmidt v. Adams, 438 S.E.2d 659, 659 (Ga. Ct. App. 1993). See also Int'l Indem. Co., 823 S.E.2d at 810 ("[S]overeign immunity shields from suit the State and its departments and agencies, including claims

10

against the State's officers or employees in their *official* capacity."). "Official immunity, in contrast, is applicable to government officials and employees sued in their individual capacities." Schmidt, 438 S.E.2d at 659; Int'l Indem. Co., 823 S.E.2d at 810 ("[*O*]*fficial* immunity 'offers public officers and employees limited protection from suit in their *personal* capacity.'" (quoting Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001))). "[O]fficial immunity is intended to protect public officials in the honest exercise of their judgment, however erroneous or misguided that judgment may be." Hemak v. Houston Cnty. Sch. Dist., 469 S.E.2d 679, 681 (Ga. Ct. App. 1996).

Official immunity is codified in the Georgia Constitution. Ga. Const. of 1983, art. I, § II, para. IX(d). The Georgia Constitution states, in relevant part:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

Id. In other words—unless specifically modified in the GTCA—the Georgia Constitution provides official immunity for officers acting in their individual capacities unless (1) an officer causes injuries through the negligent performance or failure to perform their ministerial duties or (2) an officer acts "with actual malice or with actual intent to cause injury in the performance of their official functions," whether discretionary or ministerial. Id.; Mommies Props., LLC v. Semanson, 880 S.E.2d 376, 383 (Ga. Ct. App. 2022) (same); Siegrist v. Herhold, 880 S.E.2d 336, 338–39 (Ga. Ct. App. 2022) ("The term 'official functions' means 'any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts.'" (quoting Gilbert, 452 S.E.2d at 483)).

The GTCA, in contrast, provides immunity "to torts committed by a 'state officer or employee' who was acting within the scope of his or her official duties or employment on behalf of a specific 'state government entity.'" Hartley, 759 S.E.2d at 862. In Hartley, the Georgia Supreme Court held that police officers employed by a private college were not immune "state officer[s] or employee[s]" under the GTCA. Id. The GTCA defines a "state government entity" as "a state office, agency, authority, department, commission, board, division, instrumentality, or institution." Id. (quoting O.C.G.A. § 50-21-22(6)). The private college did not fit this definition, so the private police officers were not acting on

behalf of a "state government entity." Id. As the court explained, "a person who was not acting for a specific 'state government entity' cannot be deemed an immune 'state officer or employee' as that term is used in the GTCA." Id.

Where the GTCA does not apply—and accordingly does not "specifically provide[]" modifications to the immunity in Paragraph IX(d)—the scope of the immunity described in Paragraph IX(d) governs. See Ridley v. Johns, 552 S.E.2d 853, 854 (Ga. 2001) (explaining that, because defendant qualified as a "state officer or employee" under the GTCA, the limitations in Paragraph IX(d) did not apply). In Adams v. Hazelwood, 520 S.E.2d 896 (Ga. 1999), for example, a county employee's immunity was governed by Paragraph IX(d)'s limitations because "counties are expressly excluded from the waiver of immunity in the [GTCA]," Ridley, 552 S.E.2d at 854 (citing Adams, 520 S.E.2d at 896), while county employees qualify as "state officers or employees" under Paragraph IX(d). Thus, county employees could be held liable for discretionary torts committed with malice under Paragraph IX(d). Id.

Similarly—while the Hartley court held that the GTCA did not provide immunity to private police officers—if the officers qualified as "officers and employees of the state" under Paragraph IX(d), they could still be entitled to official immunity as delineated by Paragraph IX(d). 795 S.E.2d at 467-68. The Hartley

13

court specifically reserved the issue because the defendants had not properly raised their official immunity claim. Id.

Unlike the Hartley Defendants, Corecivic Defendants properly raise their official immunity claim in this case. Here, CoreCivic Defendants do not argue that they are entitled to immunity under the GTCA. See generally Dkt. No. 13-1. Instead, they argue that they may be entitled to official immunity under Paragraph IX(d) because they may qualify as "officers and employees of the state." Dkt. No. 13-1 at 8–9.

The Georgia Constitution was amended in 1991, ratifying Paragraph IX(d). Kyle v. Ga. Lottery Corp., 718 S.E.2d 801, 803 n.1 (Ga. 2011). "The General Assembly created the 1991 amendment and the Georgia Tort Claims Act as a unit. As such, they may be read together to interpret meaning." Id. Unlike Paragraph IX(d), the GTCA was amended in 1994 to expressly exclude "a corporation, whether for profit or not for profit" from its definition of "state officer or employee." O.C.G.A. § 50-21-22(7).

> Prior to 1994, the GTCA waived sovereign immunity for "state officers and employees while acting within the scope of their official duties or employment," and included in the definition of officers and employees "agent[s] of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state." OCGA §§ 50-21-22(7); 50-21-23(a).

<u>Williams v. Dep't of Corr.</u>, 481 S.E.2d 272, 274 (Ga. Ct. App. 1997).[2] In <u>Williams</u>, the Georgia Department of Corrections contracted with Athens-Clarke County for the county to house state prisoners for $10 per day. <u>Id.</u> When evaluating whether the 1991 GTCA protected a county official from liability while supervising inmates, the Georgia Court of Appeals did not resolve whether the county acted as an independent contractor or an agent of the state, leaving this issue for the jury and noting that "[s]erving concurrently as an agent and as an independent contractor is not mutually exclusive." <u>Id.</u> at 276.

The court observed that the 1991 GTCA did not define the terms "agent" or "independent contractor," but "under the Code's general contract provisions, an independent contractor is one who 'exercises an independent business and . . . is not subject to the immediate direction and control of the employer.'" <u>Williams</u>, 481 S.E.2d at 275 (quoting O.C.G.A. § 51-2-4 (1997)).[3] "The chief test

---

[2] The full definition reads:

> 'State officer or employee' means any officer, employee, or agent of the state, including elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state.

1992 Ga. Laws 1886.

[3] This definition remains the same in the current version of the Code. <u>See</u> O.C.G.A. § 51-2-4.

to be applied in determining whether a person is employed as a servant or as an independent contractor . . . [is] whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract." Id. (first quoting Bowman v. C.L. McCord Land, etc., Dealer, 331 S.E.2d 882, 883 (Ga. Ct. App. 1985); and then citing Perry v. Soil Remediation, 471 S.E.2d 320 (Ga. Ct. App. 1996)); see also Royal v. Ga. Farm Bureau Mut. Ins. Co., 777 S.E.2d 713, 715 (Ga. Ct. App. 2015).

CoreCivic Defendants are likely not "officer[s] or employee[s]" under the current GTCA, which excludes "corporation[s], whether for profit or not for profit" from its definition of state officer or employee. O.C.G.A. § 50-21-22(7). However, if the contract between the GDC and CoreCivic does not grant, and CoreCivic does not assume, "the right to control the time, manner, and method of the performance of the work," CoreCivic may be an agent and not an independent contractor under the 1991 GTCA. Williams, 481 S.E.2d at 275.If so, CoreCivic Defendants might be "state officer[s] or employee[s]" under the 1991 GTCA and under Paragraph IX(d). 1992 Ga. Laws 1886; Ga. Const. of 1983, art. I, § II, para. IX(d) (referring to "officers and employees of the state"). If Corecivic is granted or assumes "the right to control the time, manner, and method of the performance of the work," then

16

it may be an independent contractor, and it could be excluded from immunity under the 1991 GTCA and under Paragraph IX(d). Williams, 481 S.E.2d at 275.

Thus, although Corecivic Defendants have raised a non-frivolous immunity defense, the issue requires further discovery to determine the scope and terms of Corecivic's contract with the state before the Court can determine whether and to what extent Corecivic's novel state claim could be implicated. It is not clear at this stage in the proceedings whether Corecivic's official immunity claim would be claim-determinative, so the Court will not decline jurisdiction on the grounds that the claim raises a novel issue of state law.

**B. Compelling reasons for declining jurisdiction**

CoreCivic Defendants further argue that there is a high likelihood of jury confusion if both the federal and state claims are tried together, which presents a "compelling reason" for declining jurisdiction. Dkt. No. 13-1 at 4. First, Plaintiff's Section 1983 claims require proof Defendants acted "deliberately," "with a sufficiently culpable state of mind," which is a subjective inquiry and requires more than mere negligence. Id. at 6 (citing Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004)). In contrast, Plaintiff's state law claim is for negligence, which is an objective inquiry. Id. (first citing O.C.G.A. § 51-1-2; and then citing McNeely v. M. & M. Supermarkets, Inc., 269 S.E.2d 483,

484 (Ga. Ct. App. 1980)). Second, CoreCivic Defendants emphasize that "Section 1983 and Georgia state law apply different procedures and standards for assessing certain types of damages." Id. Under Georgia law, plaintiffs must meet a "clear and convincing" standard of proof for punitive damages, and the amount of damages must be determined through a bifurcated trial. Id. at 6-7 (citing O.C.G.A. § 51-21-5.1(b)). Federal law does not have these requirements. Id. (first citing Lambert v. Fulton Cnty., 253 F.3d 588, 597 (11th Cir. 2001); and then citing Padilla v. City of Saginaw, 867 F. Supp. 1309, 1316 (E.D. Mich. 1994)). Georgia law also imposes a statutory cap on punitive damages unless the defendant acted with "specific intent," and federal law does not have a similar cap. Id. at 7 (first citing O.C.G.A. § 51-12-5.1(f), (g); and then citing Bogle v. McClure, 332 F.3d 1347, 1362 (11th Cir. 2003)). Third, CoreCivic Defendants point to the different standards for immunity at issue in the claims—qualified immunity versus official immunity. Id. Plaintiff does not dispute these differences, instead arguing that they "do not create meaningful jury confusion" because the Court has a variety of means to address any potential confusion. Dkt. No. 16 at 3.

"[C]ourts in this circuit have hesitated to exercise pendent jurisdiction over state claims which would only serve to introduce jury confusion and delay." Gamez v. Brevard Cnty., No. 6:06-cv-716-Orl-22DAB, 2006 WL 2789031, at *2 (M.D. Fla. Sept. 26, 2006).

It is possible, as courts in this circuit have found in similar circumstances, that exercising supplemental jurisdiction over Plaintiff's state claim could confuse the jury. See Cerny v. Boulevard Del, Inc., No. 6:18-cv-1808-Orl-22TBS, 2019 WL 5291208, at *9 (M.D. Fla. July 11, 2019) ("Combining Plaintiffs' Lanham Act claims with their state law claims for statutory and common law unauthorized misappropriation of likeness, conversion and unjust enrichment would potentially serve to create jury confusion and delay, particularly with respect the different elements of proof and damages." (footnote omitted)); Bunger v. Hartman, 851 F. Supp. 461, 464 (S.D. Fla. 1994) ("Given the different theories and the potential jury confusion, the case, in fact, likely would be severed, or at least set for separate trials, if all of the claims in the Amended Complaint remained in federal court."); Cont'l 332 Fund, LLC v. Kozlowski, No. 2:17-cv-41-FtM-38MRM, 2020 WL 3128862, at *2 (M.D. Fla. June 12, 2020) ("The facts underlying the [defendant] Kozlowski state-law claims overlap—but do not mirror—those underlying the [defendant] Hilz claims, and the claims are likely governed by laws from different states. The potential for jury confusion favors dismissal of the claims against [the defendant].").

However, courts in this circuit have also rejected the possibility of jury confusion in similar cases, reasoning that courts are "more than equipped to apply the proper standards

applicable to section 1983 claims and those of general negligence." Hunt v. Gualtieri, No. 8:15-cv-1257-T-33EAJ, 2015 WL 4250601, at *3 (M.D. Fla. July 13, 2015). As one such court explained in a case containing both Section 1983 and state-law negligence claims, "in the event [the] action proceeds to a jury trial, the Court will inform the jury on the proper law to apply for each Count and, if appropriate, will inform the jury on the proper elements to apply in calculating damages." Id.; see also Santais v. Corr. Corp. of Am., No. 5:16-cv-80, 2017 WL 402979, at *6 (S.D. Ga. Jan. 30, 2017), report and recommendation adopted as modified, No. 5:16-cv-80, 2017 WL 1100817 (S.D. Ga. Mar. 23, 2017) (before the court on a Section 1915 screening). Furthermore, setting aside the issue of official immunity—which the Court will evaluate after further discovery—Plaintiff's negligence claim is not particularly novel or complex and this Court "regularly addresses Section 1983 actions that also contain conventional state law claims, such as negligence." Hunt, 2015 WL 4250601, at *5.

As Plaintiff argues, the Court will be able to prevent jury confusion through devices such as "[p]roper jury instructions, argument of counsel and special verdict forms, if necessary." Dkt. No. 16 at 3. The elements of an Eighth Amendment Section 1983 claim and a negligence claim are also not so similar as to cause jury confusion that cannot be remedied by proper jury instructions, and

20

the claims rely upon the same factual circumstance rather than overlapping circumstances which could confuse the jury. Cf. Hunt, 2015 WL 4250601, at *3; Kozlowski, 2020 WL 3128862, at *2. Thus, although the possibility of jury confusion is a relevant consideration, this case is not the "exceptional circumstance[]" that presents a "compelling reason" for declining jurisdiction. 28 U.S.C. § 1367(c)(4). Because none of the 28 U.S.C. § 1367(c) factors are strongly implicated at this stage in the case, the Court need not evaluate the Gibbs factors. Palmer, 22 F.3d at 1569 (explaining that in the absence of any of § 1397(c)'s four factors, the court must exercise supplemental jurisdiction). Even considering the Gibbs factors, because § 1397(c)(4) is potentially implicated, the factors weigh in favor of retaining jurisdiction.

### C. **Gibbs** Factors

The Gibbs factors are "judicial economy, convenience, fairness, and comity." Id. At this stage in the case, on the whole, these factors weigh in favor of retaining jurisdiction.

#### 1. Judicial economy

Judicial economy is "served when issues of state law are resolved by state courts." Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002). However, as discussed supra, it is not clear to whether the Court will face a novel issue of state law that could be better served by state-court resolution. When evaluating judicial economy, courts also examine the stage of the

21

proceedings and whether the defendant wasted judicial resources by failing to timely raise his jurisdictional arguments. Ameritox, 803 F.3d at 537. In this case, CoreCivic Defendants filed their motion to dismiss for lack of jurisdiction in a timely manner, prior to serving their answer, conducting discovery, or filing any other substantive motions. See generally Dkt. No. 13-1.

By definition, however, Plaintiff's supplemental claim is "so related" to the Section 1983 claim "such that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Retaining the claims in the same forum would preserve judicial economy by allowing a single court to preside over these claims, which are premised on the same underlying circumstances and utilize much of the same evidence. See Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 746 (11th Cir. 2006) ("[T]he policy of supplemental jurisdiction is to support the conservation of judicial energy and avoid multiplicity in litigation." (citing Rosado v. Wyman, 397 U.S. 397, 405 (1970)); cf. Perez v. Midland Nat'l Life Ins. Co., No. 1:19-cv-23650, 2021 WL 1558646, at *4 (S.D. Fla. Apr. 21, 2021) ("[H]aving these issues—and related issues that continue to surface—litigated in one forum, as opposed to both state and federal court, will ensure judicial economy of both forums' resources."). Therefore, considerations of judicial economy weigh more in favor of retaining jurisdiction in this case.

**2. Convenience**

The claims in this case are premised upon different theories of liability, but they implicate the same events, the same evidence, and the same CoreCivic Defendants. Therefore, "as far as the parties are concerned, it would be most convenient to try every claim in a single forum." Ameritox, 803 F.3d at 539. As such, considerations of convenience weigh in favor of retaining jurisdiction.

**3. Fairness**

The Eleventh Circuit has found fairness weighs in favor of retaining jurisdiction where declining it would "necessarily impose extraordinary burdens on the litigants." Id. at 539-40 (holding that "fairness concerns d[id] not weigh in favor of retaining jurisdiction" where "retrial [would not] necessarily impose extraordinary burdens on the litigants." (citing Redondo Constr. Corp. v. Izquierdo, 662 F.3d 42, 49-50 (1st Cir. 2011))); Izquierdo, 662 F.3d at 49-50 (finding that declining jurisdiction would "impose huge burdens" because the parties had engaged in "extensive discovery" in English and would need to translate all documents and testimony to Spanish or redo discovery).

In this case, the parties have not conducted extensive discovery or utilized valuable resources litigating the merits of this case. However, if the Court declines jurisdiction in this case, "Plaintiff is concerned with the possibility of being unable

to refile since the statute of limitations has likely expired." Dkt. No. 16 at 9–10.

CoreCivic Defendants do not address the merits of Plaintiff's concern, instead arguing that "[i]t would not be fundamentally unfair if his negligence claim were time-barred, particularly where he will be able to proceed on his Section 1983 claim." Dkt. No. 20 at 3. CoreCivic Defendants do not explain why barring Plaintiff from recovering on a potentially meritorious claim properly brought before the district court "would not be fundamentally unfair." Id. While "every litigant who brings supplemental claims in court knowingly risks the dismissal of those claims," Ameritox, 803 F.3d at 539, discretionarily dismissing and thereby barring an otherwise valid claim seems too bitter a pill—especially when considerations of judicial economy, convenience, and comity would not be served if Plaintiff's state-law claims were barred. Thus, fairness weighs in favor of retaining jurisdiction.

### 4. Comity

Considerations of comity are not strongly implicated at this stage in the proceedings. As discussed supra, depending on the terms of Corecivic's contract with the state, Corecivic's novel state-law official immunity claim might be implicated. Currently, it is unclear whether the defense could be outcome-determinative. Furthermore, this is not a case involving a "needless decision of

state law" that the Supreme Court has admonished federal courts to avoid, such as a case where "a court decides issues of state law after the federal claims are dismissed" or "where it appears that the 'state claim constitutes the real body of a case, to which the federal claim is only an appendage.'" Ameritox, 803 F.3d at 531 (alterations accepted) (quoting Gibbs, 383 U.S. at 727).  Thus, considerations of comity are not strongly influential at this time.

### D. All considerations taken together

In summation, 28 U.S.C. § 1367(c) is only weakly implicated, if implicated at all. Judicial economy, convenience, and fairness weigh in favor of retaining jurisdiction. Considerations of comity do not strongly influence the analysis at this time. Thus, the Court retains jurisdiction under 28 U.S.C. § 1367(a) and **DENIES** Corecivic's motion to dismiss Plaintiff's state-law negligence claim.

### II.  Defendant Grieco's motion to dismiss

Defendant Grieco filed a motion to dismiss based on Plaintiff's failure to state a claim and qualified immunity. Dkt. No. 14. Plaintiff argues that, through his motion to dismiss, Defendant Grieco "[i]mplicitly . . . asks the Court to reverse its July 26, 2021, Order on frivolity review under 28 U.S.C. [§] 1915A, in which the Court authorized an action against Defendant Grieco for deliberate indifference in the previous case" Plaintiff filed pro se. Dkt. No. 19 at 1. Accordingly, Plaintiff argues, the Court

should apply the same deferential standard as on a motion for reconsideration. Id. at 2-3.

While there is not binding precedent in this circuit governing this question, Defendant Grieco points to prior cases where courts in this division have applied a de novo standard rather than the deferential motion-to-reconsider standard. Dkt. No. 22 at 2 (first citing Smith v. Barrow, No. CV 311-004, 2012 WL 6519541 (S.D. Ga. Nov. 9, 2012); and then citing Merilien v. Granison, No. CV 318-056, 2019 WL 2499186 (S.D. Ga. Feb. 13, 2019)). Furthermore, as Plaintiff himself argues, his counsel "crafted the complaint anew" when he refiled it. Dkt. No. 16 at 9. Permitting Plaintiff to modify and refile his claims without permitting Defendant Grieco to challenge them would be fundamentally unfair. Thus, the Court will follow Smith and Merilien and evaluate Defendant Grieco's argument de novo.

Defendant Grieco argues that Plaintiff failed to plausibly allege facts showing Defendant Grieco was subjectively aware of a known risk and disregarded the risk as required to succeed in an Eighth Amendment failure to protect claim. Dkt. No. 14-1 at 4. Defendant Grieco underscores that "there are no fact allegations showing that Defendant Grieco was ever placed on notice of any specific threat as to Plaintiff, from Mingo or otherwise at CCF." Id.

The Eighth Amendment prohibits the infliction of
"cruel and unusual punishments." U.S. Const. amend.
VIII. The Supreme Court has read these words to impose
a duty on prison officials to "take reasonable measures
to guarantee the safety of the inmates." Farmer[v.
Brennan], 511 U.S. [825,] 832 [1994] (quoting Hudson v.
Palmer, 468 U.S. 517, 526–27 (1984)). That duty, the
Supreme Court has held, includes "protect[ing] prisoners
from violence at the hands of other prisoners." Id. at
833 (quotation omitted).

Mosley v. Zachery, 966 F.3d 1265, 1270 (11th Cir. 2020). To plead

a constitutional violation for failure to protect, a plaintiff

must allege facts that reasonably raise the inference that the

defendant acted with deliberate indifference to a substantial risk

of serious harm. Id. at 1270. "Deliberate indifference has two

components: one subjective and one objective." Id. (citations

omitted) (quoting Caldwell v. Warden, FCI Talladega, 748 F.30 1090,

1099 (11th Cir. 2014)). "A plaintiff must show both that the

defendant actually (subjectively) knew that an inmate faced a

substantial risk of serious harm and that the defendant disregarded

that known risk by failing to respond to it in an (objectively)

reasonable manner." Id. at 1270–71 (alterations accepted)

(citations omitted) (quoting Bowen v. Warden, Baldwin State

Prison, 826 F.3d 1312, 1320 (11th Cir. 2016)); see also Farmer,

511 U.S. at 837.

Defendant Grieco urges that he was not subjectively aware of

a serious threat to Plaintiff merely because he knew Plaintiff had

been assigned to protective custody; according to Defendant

27

Grieco, "[t]his only shows that Defendant Grieco knew Plaintiff was in protective custody, nothing more." Dkt. No. 14-1 at 6. Because he was not on the classification committee, Defendant Griego argues that "it cannot be inferred that [he] had knowledge of [the committee's] conclusions." Id. This argument fails to recognize that while a court may not rely upon conclusory allegations, it must make reasonable inferences. See, e.g., Ray, 836 F.3d at 1347. Here, Plaintiff alleges:

- "On or about March 24, 2020, a member of the 'Gangster Disciples' street gang in Plaintiff's housing unit made threats against Plaintiff's life for alleged debts owed by Plaintiff to a Gangster Disciple leader," dkt. no. 1 ¶ 14;

- "It is commonly known in Georgia prisons that a threat by a gang can be carried out by any gang member or even a non-gang member. In other words, if a gang puts out word that an inmate is going to be attacked, it is a near-certainty that the inmate will be attacked," id. ¶ 46;

- "The classification committee at CCF investigates requests for protective custody and grants or denies the requests," id. ¶ 18;

- "Defendants Upton and Jones . . . investigated [the] threats [against Plaintiff], verified those threats, determined there was a substantial risk of serious harm to Plaintiff, and

granted Plaintiff's request for protective custody," id.
¶ 19;

- "Defendants Upton, Grieco, Webb, Jones, Williams, Clark, and
  Strickland were aware of a serious threat to Plaintiff's life
  and safety because each of these Defendants knew that
  Plaintiff had been assigned to protective custody," id. ¶ 62;
  and

- "Because they knew Plaintiff had been assigned to protective
  custody, Defendants Upton, Grieco, Webb, Jones, Williams,
  Clark, and Strickland knew that the classification committee
  had independently investigated and validated the threat
  against Plaintiff's life coming from gang members at CCF,"
  id. ¶ 63.

It is reasonable to infer at this stage in the proceedings
that the classification committee's determination that an inmate
faces a substantial and verified threat is a necessary prerequisite
to the committee granting protective custody. See id. ¶ 19. Here,
the classification committee granted Plaintiff's request for
protective custody. Id. ¶¶ 17-18 Defendant Grieco knew Plaintiff
was in protective custody because he patrolled the area. Id. ¶¶ 39-
42. Thus, even though Defendant Grieco was not on the
classification committee, id. ¶¶ 18-19, it is reasonable to infer
that Defendant Greico knew that Plaintiff had previously faced a

substantial and verified threat prior to his placement in protective custody.

And it is reasonable, too, to infer at this stage in the proceedings that Defendant Greico knew that Plaintiff continued to face a substantial risk even after he was placed in protective custody. First, Plaintiff alleges that the classification committee included Defendant Upton, who "regularly did rounds" in Plaintiff's segregation area with Defendant Grieco. Id. at ¶¶ 19, 39. It is reasonable to infer that Defendant Upton relayed the details of Plaintiff's classification to Defendant Greico, particularly considering that Plaintiff alleges he pleaded "multiple times" to be moved. Id. ¶ 40. As Plaintiff alleges, "it is commonly known in Georgia prisons that a threat by a gang can be carried out by any gang member or even a non-gang member," so it is reasonable to infer that Defendant Grieco knew that Plaintiff faced a substantial risk. Id. ¶ 46.

Even without these inferences, Plaintiff further alleges that "Defendant[] . . . Grieco w[as] aware of a serious threat to Plaintiff's life and safety" while CCF housed Plaintiff in protective custody "because Plaintiff pleaded with [him] multiple times between April 1 and April 10 of 2020 to move him to a single cell," and that "[w]hen Plaintiff pleaded . . . Plaintiff reiterated that he was assigned to protective custody, and reminded . . . Defendant[] that the PC Single-Cell Policy required that he

30

be put in a single cell." Id. ¶¶ 66–67. Considering that the classification committee had found a substantial and verifiable threat against Plaintiff that merited protective custody, that Plaintiff repeatedly begged to be moved to a single cell, and that Plaintiff even reminded Defendant Grieco about the PC Single-Cell Policy, it is reasonable to infer that Defendant Grieco knew that Plaintiff faced a substantial risk of harm, even if he did not know every detail of the threat against Plaintiff. Cf. Goodman v. Kimbrough, 718 F.3d at 1332, 1332 (11th Cir. 2013) ("Whether prison officials had the requisite awareness of the risk 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" (quoting Farmer, 511 U.S. at 842)). While maybe something like a very intense desire for solitude could motivate someone to "beg[]" to be moved to a single cell, it is reasonable to infer that a person repeatedly begging in this manner is in serious danger. Dkt. No. 1 ¶ 40. And inferring that Defendant Grieco was aware of a substantial risk to Plaintiff, he ignored the risk by failing to take action to protect Plaintiff. Id. ¶ 44.

As such, Plaintiff's allegations satisfy the subjective component of deliberate indifference as to Defendant Grieco. Discovery may undermine or refute these inferences, but at this

stage—accepting Plaintiff's non-conclusory allegations as true and taking all inferences in Plaintiff's favor—Plaintiff has successfully stated a Section 1983 Eighth Amendment Claim against Defendant Grieco.

Next, Defendant Grieco argues that qualified immunity applies. Dkt. No. 14-1 at 7–8. Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Plaintiff does not dispute that Defendant Grieco performed a discretionary function. See Dkt. No. 19 at 5–11.

The Supreme Court has recognized a two-step process for analyzing whether qualified immunity adheres. Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). To determine whether qualified immunity protects a defendant, a court examines whether (1) "the officer's conduct amounted to a constitutional violation" and (2) "the right violated was 'clearly established' at the time of the violation." Id. (citing Saucier, 533 U.S. at 201). Here, Defendant Grieco disputes only the first step; Defendant Grieco argues that he is entitled to qualified immunity because Plaintiff has failed

to plead a violation of his Eighth Amendment rights. Dkt. No. 14-1 at 7–8 (arguing that Plaintiff does not show that Defendant Grieco violated Plaintiff's Eighth Amendment rights because Plaintiff does not satisfy the subjective knowledge component). As discussed, Defendant Grieco has successfully pleaded a violation of his Eighth Amendment rights. Thus, Defendant Grieco's argument fails. For these reasons, Defendant Greico's motion to dismiss, dkt. no. 14, is **DENIED**.

## CONCLUSION

Upon consideration of 28 U.S.C. § 1367(c) and the Gibbs factors, the Court **DENIES** CoreCivic Defendants' motion to dismiss Plaintiff's negligence claim.  Dkt. No. 13.  Because Plaintiffs' allegations raise a reasonable inference that Defendant Grieco subjectively knew that Plaintiff faced a substantial threat to his safety even after he was placed in protective custody, Plaintiff successfully states a claim for relief. Thus, the Court **DENIES** Defendant Grieco's motion to dismiss. Dkt. No. 14.

**SO ORDERED** this 28th day of March, 2023.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

33